UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JUSTINE JIMENEZ and MARVIN HART,

                               Plaintiffs,

        -against-

THE CITY OF NEW YORK, Detective WILLIAM SCHMIDT Shield No. 3322, Detective MICHAEL J. RAGONA, Detective ERIC MEZA Shield No. 5566, Sergeant RAYMOND TOMINS, Shield No. 5336, Police Officer JOHN and JANE DOE # ONE through SIX in their individual and official capacities as employees of the City of New York,

                               Defendants.

------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

15 CV 3257 (BMC**)**

       Plaintiff, Marvin Hart, by his attorneys, The Rameau Law Firm, respectfully submits this memorandum of law in opposition to defendants' motion for summary judgment, pursuant to Fed. R. Civ. P. 56(c).

## STANDARD OF REVIEW

       In deciding a summary judgment motion "the court must … resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Institute for Shipboard Educ. v. Cigna Worldwide Ins. Co.,* 22 F.3d 414, 418 (2d Cir.1994)." Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996). To defeat a motion for summary judgment, "the nonmoving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno v. Elmsford Union Free Sch. Dist.,* 812 F.Supp.2d 454, 467–68 (S.D.N.Y. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57 (1986)).

## DISPUTED FACTS

At the time of this incident, there were no outstanding warrants for plaintiff's arrest. See Plaintiff's Response to Defendants' 56.1 Statement ("Counter 56.1"), No. 4.  The only purported indication of a warrant for Marvin Hart is a stamp on the Criminal Court Action Sheet in the criminal case.  See Counter 56.1, No. 4; Declaration of Amatullah Booth ("Booth Decl."), Exhibit ("Ex.") "F."  More importantly, there is no mention of Mr. Hart having a warrant in the criminal court proceedings.  See Counter 56.1, No. 5; Booth Decl., Ex. E. The defendants claim that an I-card was issued for Mr. Hart. That I-card pertained to Mr. Hart as a witness, and not as the perpetrator of a crime.  See Counter 56.1, No. 4; Declaration of Afsaan Saleem ("Saleem Decl."), Ex. 1, pp. 29. One cannot be arrested on that basis alone. See Counter 56.1, No. 4, Saleem Decl., Exhibit "2."

Defendant Ragona entered the apartment, walked into a room and returned claiming he found a gun.  See Counter 56.1, No. 10; Saleem Decl., Ex. 3, pp. 122-123.  Defendant Ragona appeared with a gun inside one of Mr. Hart's socks and said in sum and substance "We got to take this gun for DNA testing."  See Counter 56.1, No. 21; Saleem Decl., Ex. 3, pp. 144-148.

On the day in question, Mr. Hart and Ms. Jiminez woke up to extremely loud banging at the door.  See Counter 56.1, No. 13; Saleem Decl., Ex. 3, pp. 94-98.  Mr. Hart immediately got dressed and went to the door. Id. Mr. Hart heard an officer make a statement about an air-conditioner while the officers were already inside the apartment. See Counter 56.1, No. 14; Saleem Decl., Ex. 3, pp. 116-118. The defendants claim they recovered the weapon on the outside of a windowsill where the air conditioner is bolted to the windowsill. See Counter 56.1, No. 16; Saleem Decl., Ex. 3, pp.121-122.

As Mr. Hart headed to open the door, the peephole came flying through the apartment. See Counter 56.1, No. 19; Saleem Decl., Ex. 3, p. 97. Immediately after Mr. Hart opened the apartment door, he was slammed to the floor and held down by the defendants. Id.

Mr. Hart denies the defendants' allegation that there was a gun in or anywhere around the house. See Counter 56.1, No. 33; Booth Decl., Ex. I, p. 205.  He contends that the officers in this case planted the gun. Id.  Mr. Hart's evidence is Ms. Jiminez and Mr. Hart's testimony.  See Counter 56.1, No. 38; Booth Decl., Ex. I, p. 205.

**POINT I**
**THERE ARE ISSUES OF FACT WHICH PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S FALSE ARREST CLAIM**

**A. Defendants have not met their burden of establishing as a matter of law that Mr. Hart had an outstanding warrant for his arrest.**

Defendants have NOT established that Mr. Hart had a warrant for his arrest. In fact, the evidence points to the contrary. Defendants alleged that Justine Jimenez had a warrant for her arrest.  To establish that fact, defendants produced the actual warrant for Ms. Jimenez's arrest. See Declaration of Amatullah K. Booth in Support of City Defendants' Motion for Summary Judgment ("Booth Decl."), Exhibit ("Ex.") C.  They have failed to produce the same for Mr. Hart because it does not exist and never existed.

If there was a warrant out for his arrest that issue would have been resolved at arraignment where the origin of the warrant would have been stated plainly on the record and the issue either resolved at the time or was referred to the court where the warrant originated.  That is simply not the case here.  The defendants produced the transcript of a subsequent court appearance that fails to confirm the existence of a warrant.  The transcript produced references a docket ending in the numbers 714.  Attorney Amy Rameau traveled to criminal court in order to

identify this docket and obtain necessary information only to learn that there is no such docket in plaintiff's name.  See Saleem Decl., Ex. 7.  It is unclear how this matter came to be before the court at all. For all, we know it may have been advanced from a preexisting court date.

The only other alleged evidence they reference to support their contention that Mr. Hart had a warrant is the Criminal Court Action Sheet that has a stamp mistakenly placed upon it that says "Warrant."  See Booth Decl., Ex. F. A likely explanation for this stamp is that someone at arraignment saw an indication of an I-card for plaintiff, and stamped the document, not realizing plaintiff was only an indicated witness on that I-card. See Booth Decl., Ex. D. In Ms. Jiminez's case, her arraignment tracking sheet (the real name of this document is not known), clearly indicates that she had two warrants at the time. See Declaration of Afsaan Saleem in Opposition to Defendants' Motion for Summary Judgment ("Saleem Decl."), Ex. 4.  On the other hand, Mr. Hart's sheet contains no mention of any warrants.  See Saleem Decl., Ex. 5.  It does make mention that there is an I-Card out for Mr. Hart as a witness in an unrelated matter as stated above. Id.

Having an I-Card as a witness is not a sufficient basis, on its own, for an arrest.  See Saleem Decl., Ex. 1, pp. 29-30.  In addition, aside from the warrant for Justine Jiminez, the defendants were in the process executing a parole warrant at the location.  See Saleem Decl., Ex. 6, p, 139.  See Booth Decl., Ex. I, pp. 94-96.  Thus, as defendants have failed to put forth undisputed evidence that Mr. Hart had an outstanding warrant at the time of his arrest, they have not met their burden for summary judgment on this claim.

    **B. Mr. Hart's testimony that the officers' planted the gun raises an issue of fact to defeat summary judgment on this claim.**

Defendants contend that since plaintiff's only evidence that the officers planted the gun is plaintiff's own testimony, plaintiff's claim is implausible and incredible as a matter of law. Defendants raise a credibility argument that is for a trier of fact to resolve.

Issues of credibility are reserved for the jury but for in the rarest of cases. This is not such a case. A court can invade that particular province of the jury where the majority of plaintiff's testimony "is contradictory and incomplete." Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005). In Jeffreys, the plaintiff, shortly after the incident gave at least three statements to medical staff, police investigators and Correction personnel—where he stated he jumped out of the window. Id. at 552. Nine months later, Jeffrey changed his story to claim that he was thrown out of the window. Id. Accordingly, the Circuit court upheld the District Court's granting of summary judgment as plaintiff's testimony was "'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." Id. at 555. Summary judgment is improper here as the parties' accounts diverge on the ultimate issue in the case, the planting of the gun.

Plaintiff testified consistently and never contradicted himself on the issue. See Saleem Decl., Ex. 3, pp. 121-125, 144-149, 205-209. He stated that he did not see the officers place the gun in his sock and could not actually see the gun but was able to deduce there was a gun in the sock. Id. He was able to describe the officer who he observed holding up the sock containing the gun. See Saleem Decl., Ex. 3, pp. 122-123. Defendant Ragona's physical appearance is consistent with Mr. Hart's description. See Saleem Decl., Ex. 1, p. 18.

Defendants argue that it is implausible that officers would plant a gun on an innocent person; however, that officers engage in criminal conduct is not without precedent. Specifically,

allegations of police officers planting guns are rampant. See "In Brooklyn Gun Cases, Suspicion Turns to the Police," New York Times, December 11, 2014. http://www.nytimes.com/2014/12/12/nyregion/gun-arrests-with-2-things-in-common-the-officers-and-unidentified-informers.html?smid=tw-nytmetro&_r=1 (last accessed Feb. 28, 2016).

In the above referenced article, Judge Dora Irizarry found, in 2008, after officers testified at a pre-trial hearing, that their testimony "was just incredible, and I say "incredible" as a matter of law." Id. As a result, the Brooklyn District Attorney announced an investigation into officers planting guns. See "Brooklyn DA to probe allegations of NYPD cops planting guns," New York Daily News, January 15, 2015. http://www.nydailynews.com/new-york/nyc-crime/brooklyn-da-probe-nypd-cops-planting-guns-article-1.2079655 (last accessed February 28, 2016).

Defendants only get the benefit of having this court rule upon plaintiff's credibility such that the court takes this issue away from the jury where "there is no evidence in the record upon which a reasonable fact finder could base a verdict in the plaintiff's favor." Jeffreys, 426 F.3d at 554. Given plaintiff's consistent accounts, a reasonable jury could very well find that the officers planted the gun in this case. Therefore, defendants' motion for summary judgment on this count must fail.

## POINT II
## DEFENDANTS' MALICIOUSLY PROSECUTED PLAINTIFF

**A. The defendants commenced the prosecution of Mr. Hart.**

In order to establish a federal malicious prosecution claim, a plaintiff must establish four prongs: 1) initiation of criminal proceedings, 2) the proceedings terminated in plaintiff's favor; 3) there was no probable cause, and 4) the proceeding was instituted with actual malice and a

deprivation of liberty component. Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991); Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995).

"Where the defendant in a malicious prosecution action is a police officer, 'courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors.' *Espada v. Schneider,* 522 F.Supp.2d 544, 553 (S.D.N.Y.2007); *see also Llerando–Phipps v. City of New York,* 390 F.Supp.2d 372, 382–83 (S.D.N.Y.2005)." Alcantara v. City of New York, 646 F. Supp. 2d 449, 457-58 (S.D.N.Y. 2009). "*Jouthe v. City of New York,* No. 05–1374, 2009 WL 701110, at *11 (E.D.N.Y. Mar. 10, 2009) ('A police officer may also be held liable for malicious prosecution if he provides false information to the prosecutor that influences a decision whether to prosecute.') (internal quotation marks omitted)." Id. at 458.

These defendants claim that they did not initiate Mr. Hart's prosecution. Defendant Schmidt swore to the criminal court complaint, and stated that defendants Ragona and Meza informed him as to certain additional factual allegations. See Booth Decl., Ex. K. Accordingly, defendants Ragona and Meza would have had to file sworn corroborating affidavits or supporting depositions were the case to proceed against Mr. Hart. See Saleem Decl., Ex. 6, pp. 115-116. Sergeant Tomins was the supervisor of the team and authorized plaintiff's arrest. Id. at 133-134. Accordingly, all of the defendants initiated plaintiff's prosecution.

### B. There is an issue of fact as to whether the defendants had probable cause to arrest Mr. Hart.

There is no dispute amongst the parties that the proceedings terminated in plaintiff's favor. See Booth Decl., Ex. L. The issue of whether the officers had probable cause to continue

plaintiff's prosecution relates back to the issue of whether the same officers had probable cause to arrest plaintiff. Probable cause is required to initiate and continue a prosecution.  Defendants have not put forth any evidence to suggest that they gained additional or new probable cause to initiate and continue the prosecution against plaintiff.  Accordingly, if there was no probable cause to arrest and no evidence of newly acquired probable cause to justify the prosecution this element has not been conclusively established.

### C. Plaintiff can establish the actual malice prong.

If a jury believes the plaintiff's contention that the defendants planted the gun, they will conclude that the officers acted with a "wrong or improper motive." Lowth v. Town of Cheektowaga, 82 F.3d 563 (2d Cir. 1996) (internal quotations and citations omitted).  "Though actual malice and probable cause are separate elements of the claim, a lack of probable cause in this case, given the allegations, will allow the jury to infer actual malice. *Martin v. City of Albany,* 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977) (collecting cases). "Defendants cannot be found to have acted with malice without further pleading that they lacked probable cause." King v. City of New York, No. 12-CV-2344 NGG RER, 2013 WL 2285197, at *7 (E.D.N.Y. May 23, 2013).

In this case, since plaintiff did not have a warrant and was arrested under the guise that he possessed a gun, a jury could very well conclude that the gun was planted thereby defeating the defense's claim that the officers had probable cause to arrest plaintiff.  If the jury believes plaintiff, malice will be inferred.

**D. Plaintiff can establish an issue of fact as to his deprivation of liberty claim.**

Defendants claim that the criminal court transcript that they reference establishes that Mr. Hart was sentenced to time served on another matter and therefore did not suffer a deprivation of liberty in this case. The nature and circumstances of this alleged other case is unclear. It is unclear whether this matter was before the court at arraignment. As discussed *supra* in Point I, A. the issue of the warrant would have been discussed and resolved at arraignment. As defendants claims are ambiguous at best, the Court must resolve the issue in the light most favorable the plaintiff, the non-moving party. See Cifarelli, 93 F.3d at 51.

As discussed *supra*, Mr. Hart had no open warrants at the time of his arrest. He also maintains he did not owe any fines. See Saleem Decl., Ex. 3, pp. 209-211. Defendants have also failed to establish that Mr. Hart owed a fine. The transcript that they use to try and establish that plaintiff owed money on another case does not prove that Mr. Hart owed money nor does it prove that Mr. Hart had a warrant for owing money.

Assuming *arguendo* that Mr. Hart was sentenced to time served for another case, that fact, in and of itself, does not vitiate his claim of a deprivation of liberty in this case as it is unclear if any failure to pay a surcharge would have resulted in Mr. Hart being detained for the same amount of time in custody or at all. As the evidence has to be viewed in the light most favorable to the plaintiff, defendants have not sustained their burden on this point.

## POINT III
### DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

**A. If Mr. Hart's contention believed, defendants cannot claim there was "arguable probable cause" for his arrest.**

Because the parties' contention are so divergent, there is no room for "arguable probable cause." The key fact here is whether or not the defendants planted the gun. Mr. Hart's contention, which has to be credited, is that there was never a gun in or around the apartment and that the police planted it. If one were to accept those facts as true then any officer would know that planting a gun on a suspect is violative of the suspect's constitutional rights. No reasonable officer could disagree that there was no probable cause to arrest Mr. Hart on a gun possession charge when the gun was planted.

**B. The same lack of "arguable probable cause" should defeat defendants' motion on qualified immunity for the malicious prosecution claim.**

Defendants do not set forth any basis as to why the officers are entitled to qualified immunity. Instead they rely upon the same argument they set forth in the false arrest section of their qualified immunity argument. Accordingly, as there was no arguable probable cause given the established facts, this claim should be denied as well.

## CONCLUSION

As genuine issues of material fact remain as to plaintiff's false arrest and malicious prosecution claims, defendants' motion for summary judgment should be denied. There is no basis to find the officers are entitled to qualified immunity on either of these claims.

Dated: Brooklyn, New York
February 29, 2016

_____
Afsaan Saleem, Esq.

The Rameau Law Firm
Attorney for Plaintiffs
16 Court Street Suite 2504

Brooklyn, New York 11241<br>
(718) 852-4759<br>
saleemlawny@gmail.com<br>
rameaulawny@gmail.com