UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                                            :
JUSTINE JIMENEZ and MARVIN HART,                            :
                                                            :
                              Plaintiffs,                   :
                                                            :  **MEMORANDUM**
               -against-                                    :  **DECISION AND ORDER**
                                                            :
THE CITY OF NEW YORK, Detective                             :  15 Civ. 3257 (BMC)
WILLIAM SCHMIDT Shield No. 3322, Detective                  :
MICHAEL RAGONA, Detective ERIC MEZA                         :
Shield No. 5566, Sergeant RAYMOND TOMINS,                   :
Shield No. 5336, Police Officer JOHN and JANE               :
DOE # ONE through SIX in their individual and               :
official capacities as employees of the City of New         :
York,                                                       :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

It is accepted law that when the police, executing a warrant, find an illegal firearm in a commonly accessible area, and it is not apparent whether the firearm belongs to either or both of the two individuals having access to it, the police have probable cause to arrest both individuals. A false arrest action under 42 U.S.C. § 1983 cannot be maintained on the naked accusation by one of the two arrestees that the police "must have" planted the gun, where there is no evidence to support that accusation, and no evidence to exclude the other arrestee as the party who might have had actual possession of the gun. Defendants' motion for summary judgment is therefore granted.

**BACKGROUND**

The following facts are viewed in the light most favorable to plaintiff Marvin Hart, but with the recognition that plaintiff professes to have limited knowledge of the events that led to his arrest.

On or about August 20, 2014, defendant police officers went to a second floor apartment in a Brooklyn housing project to execute two warrants. One was an arrest warrant for former plaintiff Justine Jimenez,[1] and the other was a warrant for a parole violation against an individual named Pierre Santos. The apartment was leased by Jimenez, and plaintiff Hart was living with her at the time defendant police officers arrived to execute the warrants.

As most of the officers approached the apartment front door, one of them, defendant Det. Michael Ragona, positioned himself outside of the building where he could observe the exterior windows of the apartment in which Hart and Jimenez lived. The remaining police officers then began banging on the door and demanding entry to execute the warrant, during which time they heard movement within the apartment.

Hart was asleep with Jimenez in one of the apartment's two bedrooms when he heard the banging on the door. They were the only two occupants of the apartment when the police arrived. Hart jumped up and told Jimenez to stay put in the bedroom. He put on some clothes and went to the door. The police identified themselves as such and told him through the door that they had a warrant. He opened the door and let them in; the police came in and slammed him to the floor and one of them held his head down, telling him not to move.

---

[1] Hart's former co-plaintiff and friend, Justine Jimenez, stopped communicating with her attorney and Hart did not know where she went. Her claims were dismissed for non-prosecution.

2

At that point, Hart heard a communication over the officers' hand radios, which turned out to be a transmission from Ragona, in which Ragona, still observing the windows from outside, said to his fellow officers, according to Hart, "there is something under the air conditioner. Take a look and see what it is." Ragona testified that he had seen someone stick their arm outside of the bedroom window and place something under the window air conditioner. There was only one air conditioner in the apartment and it was in the bedroom that Jimenez and Hart had been sharing – the bedroom where Hart had just left Jimenez when he went to answer the banging at the door.

At that point, the officers started looking around the apartment, and, according to Hart, they said among themselves, "what is he talking about, what are you talking about. We don't know where it is." Then, one of the officers, who turned out to be defendant Det. Eric Meza, went into the bedroom and emerged with Jimenez and a sock belonging to Hart. Meza announced that he had found a gun in the sock outside the bedroom window near the window air conditioner.[2] He said to Hart and Jimenez that he was going to get it tested for DNA. One of the officers threatened Hart that if he didn't acknowledge ownership of the gun, then the police would have to arrest both of them since they both had access to the gun. Hart responded that of course the gun was going to contain his DNA since Meza had placed the gun in one of Hart's socks. Hart also responded that it wasn't going to do Jimenez or him any good for him to take ownership of the gun because the police were already going to arrest Jimenez pursuant to the warrant anyway and besides, he didn't know anything about any gun.

Hart and Jimenez were placed under arrest, Jimenez pursuant to the warrant and both Hart and Jimenez for constructive possession of the gun. Hart was released on bail. The District

---

[2] Hart's testimony was confused as to whether he saw Meza put a gun in the sock or simply assumed that there was a gun in the sock because Meza said so.

Attorney elected not to pursue the charges against Hart about six months later, and Hart then brought this action, alleging false arrest, malicious prosecution, and related claims under 42 U.S.C. § 1983.

**DISCUSSION**

Summary judgment is appropriate where there are no genuine disputes of material fact, such that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). No genuine factual issue exists when the moving party demonstrates, on the basis of the pleadings and admissible evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no reasonable jury could find in the non-movant's favor. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 86 (2d Cir.1996). A party may not defeat a motion for summary judgment by relying on unsupported assertions, conjecture, or surmise. See Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, the nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514 (1986).

The elements of a claim for false arrest under 42 U.S.C. § 1983 are derived from New York law. See Marshall v. Sullivan, 105 F.3d 47 (2d Cir. 1996) (citing Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991)). A plaintiff claiming false arrest must establish that: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Id. (citing Broughton v. State, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310 (1975)).

An arrest is privileged if it is supported by probable cause. Illinois v. Gates, 462 U.S. 213, 103 S. Ct. 2317 (1983). Accordingly, probable cause is a complete defense to a claim of

false arrest. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Probable cause, in turn, exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (internal quotation omitted); see also Singer v. Fulton Cnty. Sheriff, 63 F.3d 110 (2d Cir. 1995).

Under the New York Penal Law, a person is guilty of criminal possession of a weapon in the fourth degree when, inter alia, he "possesses any firearm." N.Y. Penal L. § 265.01. For purposes of that statute, a person is in constructive possession of an object when he is "able to exercise dominion or control" over it. Chalmers v. Mitchell, 73 F.3d 1262, 1272 (2d Cir. 1996); see also, United States v. Memoli, 333 F. Supp. 2d 233, 238 n. 3 (S.D.N.Y. 2008) (finding probable cause to arrest a family member who had constructive possession of a firearm); United States v. Morales, 851 F. Supp. 112, 116 n. 6 (S.D.N.Y. 1994) ("The Search Warrant affidavit alleges that [defendant] lived in the apartment at the time of the search; therefore, [defendant's] argument must fail because one is in constructive possession of those items in one's apartment."). As Judge Bianco recently held in Jackson ex. rel. Jackson v. Suffolk County, 87 F. Supp. 3d 386, 406 (E.D.N.Y. 2015), a §1983 case arising out of a drug arrest:

> [Plaintiff] does not dispute the following: (1) she resided at the house; (2) the officers discovered the drugs in a jacket pocket in a common area of the house—namely, a dining room closet; and (3) Jeffrey [the owner of the jacket] did not admit the drugs belonged to him. Moreover, in the opposition papers, [plaintiff] does not contend (and there is no evidence to support a contention) that she did not have "dominion or control" over the house and the dining room closet (including the contents of the closet).

(footnote omitted). Judge Bianco therefore found at least arguable probable cause to effect the arrest based on constructive possession. I would go further than "arguable" probable cause because the facts in Jackson are sufficient to show constructive possession without qualification.

The only wrinkle in what would otherwise be a plainly meritless case is that plaintiff theorizes that the police must have planted the gun because it is not his. That is his opinion. Notably, he nowhere denies that Jimenez owned a gun, but I will assume he would testify that to his knowledge, she did not. That would still not be sufficient to avoid summary judgment, even with the assumption that plaintiff had never seen Jimenez with a gun. If it were, then a §1983 plaintiff could create an issue of fact in a case where he had been arrested in a drug transaction simply by denying that he had engaged in such a transaction, even with twenty police officers or twenty bishops swearing that they had seen him do it.

This is not to say that police never plant contraband as a pretext for an arrest, or that a plaintiff is never able to raise an issue of fact that they did. And if that is the allegation, a plaintiff could even survive summary judgment without having seen the police in the act of planting the contraband, as plaintiff here admits he did not observe. But in that situation, with the broad discovery tools that a plaintiff has at his disposal, he must come up with something more than a smidgen of circumstantial evidence to show that there is genuine, not merely possible, basis for a jury to buy his theory. And there is no evidence of planting here at all.

Indeed, the circumstantial is quite to the contrary. Plaintiff admits that he heard Ragona, who it cannot be disputed was looking at the bedroom window from the outside, call over the police radios that "there is something under the air conditioner. Take a look and see what it is." He also describes how the other officers inside the apartment did not appear to know what Ragona was talking about, and only when one of them went into the bedroom where Jimenez had

stayed was the gun located under the air conditioner. Ragona explains that he made that call over the radios because he saw someone in the bedroom stick their arm out the window and put something next to the air conditioner.

In addition, in examining the circumstantial evidence, it must be remembered that the police didn't need to plant evidence to arrest Jimenez because they already had a warrant for her; that, indeed, was one of the reasons they went to the apartment. So given the timing of Ragona's call over the radio, plaintiff's theory would require a jury to find that even before the police got to the apartment, they had preconceived a plan to plant the gun in order to arrest plaintiff; that they had all agreed to pretend that they didn't know what Ragona was talking about when he made his call over the radio; and that their reason for doing this was to arrest a person – plaintiff – as to whom there is no evidence to suggest the police even knew was there.

Looking at how this would play out at trial, I do not see any way a jury could reasonably find that the police planted a gun. Jimenez has disappeared, which may be either convenient or inconvenient for plaintiff since we do not know what she would say, and thus would supply nothing at trial. Plaintiff would not be allowed to offer his theory to a jury that the gun was planted (consider the testimony: "In my view, the police planted the gun"), because lay witnesses generally cannot testify to their opinions. And I think it's unlikely that even in summation, assuming the case went that far, would I allow plaintiff's attorney to argue that plaintiff was being set up by the police because, again, there is no evidence to support that argument and all of the circumstantial evidence goes against it. Thus, if a jury came back with a verdict in plaintiff's favor on the record that I have before me, I would have to set it aside and direct judgment for defendants. Other courts with similarly unsupported claims of evidence planting have reached the same conclusion. See e.g., Apostol v. City of New York, No. 11-cv-

7

3851, 2014 WL 1271201, at *6 (E.D.N.Y. March 26, 2014) ("Plaintiffs cannot withstand summary judgment by making unsubstantiated, convenient claims – for example, that someone must have planted the marijuana . . . . Moreover, plaintiffs' speculation about Morales's motive to fabricate the marijuana defies common sense and lacks support in the record."); Bender v. Alvarez, No. 06-cv-3378, 2009 WL 112716, at *9 (E.D.N.Y. Jan. 16, 2009) ("Plaintiff fails to provide any evidence demonstrating that the evidence was planted in his residence except for his unsupported statement."); Carlisle v. City of New York, No. 05-cv-6825, 2007 WL 998729, at *3 (S.D.N.Y. April 2, 2007) ("The problem with this theory is that plaintiff has no evidence to support it – only wishful thinking. Although plaintiff alleges that the detectives fabricated and planted evidence, he fails to offer even a scintilla of support for these allegations. . . . Plaintiff's unsupported, conclusory allegation that someone must have planted the evidence because there is no other way it could have gotten into his apartment is not sufficient to defeat a motion for summary judgment."). Cf. Hill v. Melvin, No. 05-cv-6645, 2006 WL 1749520, at *15 (S.D.N.Y. June 27, 2006) (In malicious prosecution context, "if probable cause could be met by an unsupported allegation that an arrest was based on planted evidence, then any person found in possession of contraband could sue the searching officers for malicious prosecution merely by claiming the officers planted the contraband.").

My conclusion that there was probable cause to arrest plaintiff on a theory of constructive possession resolves his remaining claims stemming from the arrest. His malicious prosecution claim fails because it requires a showing that there was no probable cause to prosecute. Probable cause to arrest is not necessarily determinative of the existence of probable cause to prosecute. See Posr v. Court Officer Shield No. 207, 180 F.3d 409 (2d Cir. 1999) (probable cause to arrest and for malicious prosecution are two separate inquiries). However, if probable cause existed at

8

the time of the arrest and the plaintiff offers no additional facts to show that it dissipated post-arrest, then the claim for malicious prosecution cannot be maintained. See Carson v. Lewis, 35 F. Supp. 2d 250 (E.D.N.Y. 1999) (citing Dukes v. City of New York, 879 F. Supp. 335, 342 (S.D.N.Y. 1995). Plaintiff's "failure to intervene" claim fails because there was no unconstitutional conduct which any non-participating officer had an obligation to stop. Similarly, plaintiff's Monell claim cannot proceed in the absence of an underlying constitutional tort. See Segal v. City of New York, 459 F.3d 307 (2d Cir. 2006).

The two remaining claims are that for unlawful entry and search, and excessive force. As to the former, there is no dispute that defendants had a warrant for Jimenez' arrest. That gave them the right to enter her home and perform a limited protective sweep in connection with her arrest. See Maryland v. Buie, 494 U.S. 325, 110 S. Ct. 1093 (1990). Further, officers may search of shared areas of the apartment building that are communal spaces, as there is no expectation of privacy, see United States v. Arboleda, 633 F.2d 985 (2d Cir. 1980), and recover items that were abandoned, see Abel v. United States, 362 U.S. 217, 80 S. Ct. 683 (1960). Under the circumstances, where officers have legally entered the apartment and had the right to recover items pursuant to various, overlapping search doctrines, it is objectively reasonable for the officers to have believed that their recovery of the gun from the window ledge was lawful. See Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003). Therefore, the officers are entitled, at the very least, to qualified immunity on plaintiff's illegal search claim.

Plaintiff's excessive force claim fails because his testimony could not be clearer that the force was not excessive. He suffered no physical injuries whatsoever. He was simply pushed down to the floor and his head was restrained there. He no doubt did not appreciate the pressure he felt on his body and head but he has not demonstrated that the force he describes was

excessive. Excessive force claims are governed by an objective "reasonableness inquiry that asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 396–97, 109 S. Ct. 1865, 1872 (1989). Moreover, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. at 396, 109 S. Ct. at 1872 (internal citations omitted). Executing an arrest warrant can be a dangerous business. Police do not engage in tortious conduct when the only force used is to restrain occupants on the premises until the police can confirm that the premises are secure.

## CONCLUSION

Defendants' motion for summary judgment is granted, and the case is dismissed. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

									_____
									U.S.D.J.

Dated: Brooklyn, New York
         March 21, 2016